688 A.2d 632

O'NEILL ELECTRIC CO., INC., PLAINTIFF–APPELLANT, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1996—Decided February 14, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Robert T. Lawless* argued the cause for appellant (*Hedinger & Lawless*, attorneys; *Mr. Lawless*, on the brief).

*Brian D. Smith*, Special Warren County Counsel, argued the cause for respondent The Board of Chosen Freeholders of the County of Warren (*Mr. Smith* of counsel, and on the brief).

*Edward M. Callahan, Jr.* argued the cause for amicus curiae, National Electrical Contractors Association, Northern New Jersey Chapter, Inc. (*Clancy, Callahan & Smith*, attorneys; *Mr. Callahan* and *James J. Cronin*, on the brief).

*Daniel P. Reynolds* argued the cause for amicus curiae, Attorney General of New Jersey (*Peter Verniero*, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel, *Mr. Reynolds*, on the brief).

*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen*, attorneys for amici curiae Utility & Transportation Contractors Association of New Jersey, Inc. and Construction Information Systems, Inc. (*Steven E. Brawer*, of counsel, and on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

Warren County keeps a list of contractors who pick up bidding documents on projects for which the County has advertised for bids. Based on the advice of the New Jersey Division of Criminal Justice, the County refused plaintiff's request for a copy of the list. Plaintiff's declaratory judgment action seeking a copy of the list was dismissed by summary judgment. Plaintiff appeals, contending: (1) the County's refusal was contrary to the purpose and intent of the bidding laws; and (2) the list is a public record under

both the Right To Know Law and the common law and therefore must be disclosed.

We have reviewed the record and the arguments presented. The judgment is affirmed.

## I

Plaintiff is an electrical contractor. Plaintiff contends that learning the identity of general contractors who are considering bidding on the project will enable it to submit a price to those contractors for the electrical work on the project. Plaintiff argues that failure to disclose the bidders list stifles competition because it prevents plaintiff and other subcontractors from learning the identities of the general contractors and thereby limits the number of potential subcontractors competing for the work. Plaintiff points out that public bidding statutes are designed to encourage competition in public projects. Plaintiff also argues that keeping the list secret creates "the potential for selective disclosure to certain contractors at the whim of the public official in charge of the list" and thereby fosters favoritism, contrary to the policy of the bidding statutes.

The National Electrical Contractors Association has submitted an *amicus* brief supporting the plaintiff's position. *Amicus* argues that

> the pool of subcontractors who may bid on a particular project is dictated by the general contractors. Any subcontractor who is not among the general contractors [sic] favorite few is denied the opportunity to bid the project. This, in turn, reduces the pool of potential bidders and ultimately denies the public the benefits of unfettered competition that the statute is intended to provide.

*Amici curiae* Utility & Transportation Contractors Association of New Jersey, Inc. and Construction Information Systems, Inc. have filed a brief arguing to the same effect.

The County argues that its non-disclosure policy inhibits bid-rigging and should be upheld. The Attorney General has filed an *amicus* brief supporting the position of the County.

## II

The public has certain rights to government documents under the so-called "Right to Know Law," *N.J.S.A.* 47:1A–1 to 1A–4. Under this statute, a member of the public has a right to examine a public record. *N.J.S.A.* 47:1A–2. Public records are defined as: "[unless otherwise specified,] all records which are required by law to be made, *maintained* or kept on file by any board, body, agency, department, commission or official of the State or of. any political subdivision thereof ... shall, for the purposes of this act, be deemed to be public records." *Ibid.* (emphasis added).

Plaintiff argues that the Local Public Contracts Law, *N.J.S.A.* 40A:11–23, requires governmental subdivisions to make revisions or addenda to advertisements or bid documents "available by notification in writing by certified mail to any person who has submitted a bid or has received a bid package...." Consequently, plaintiff argues that this statute requires the compilation of the bidders list to be "maintained." The County argues, however, that it maintains the bidders list for administrative convenience and that the requirements of the Local Public Contracts Law can be met without the list. The County points out a number of ways in which this could be done, for example,

> [t]hose companies who have filed application forms expressing general interest in providing certain commodities or services could merely be delineated on the county's computer system once they picked up a bid package. Other prospective bidders who have requested bid packages by telephone call, for instance, would have their company's name and address on the government's telephone logs. Written requests for bid packages would presumably contain the name and address of the requesting company on letterhead. Since bid packages cannot be picked up at (Warren County) government offices without payment by check from the prospective bidder, the check would normally provide adequate information about the bidder's identity. It is not inconceivable that a prospective bidder would leave its business card at the government's offices. And a gifted purchasing official could even maintain the list of bidders by memory.

The definition of a public record under the Right to Know Law "has been strictly construed." *Board of Educ. v. New Jersey Dep't of Treasury,* 145 *N.J.* 269, 276, 678 *A.*2d 660 (1996).

The Local Public Contracts Law does not specifically require that a list of bidders be "maintained." The County has presented persuasive reasons why those lists are maintained only as a matter of administrative convenience and not as a requirement. Accordingly, the list is not subject to disclosure under the Right to Know Law.

### III

 The common law right of the public to examine public documents is broader than the Right to Know Law. The County concedes that the list of bidders is a public record under the common law and that the plaintiff has standing to assert a common law right to examine this record. However, this does not mean that disclosure is automatic.

 Where the record has confidential information, the court must weigh the citizen's interest in the information against the public interest in confidentiality. *Loigman v. Kimmelman*, 102 *N.J.* 98, 104–05, 505 *A.*2d 958 (1986). The court must also consider whether the "demand for inspection is 'premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest.'" *South Jersey Publ'g Co. v. New Jersey Expressway Auth.*, 124 *N.J.* 478, 488, 591 *A.*2d 921 (1991) (quoting *Loigman, supra*). The greater the government's interest in confidentiality, the greater the citizen's interest must be to warrant disclosure. *Ibid.* If the reasons for confidentiality are strong, then the party seeking disclosure must demonstrate a compelling need. *McClain v. College Hosp.*, 99 *N.J.* 346, 362, 492 *A.*2d 991 (1985).

In deciding this issue, Judge Stritehoff said:

[N]on-disclosure of [the] bidders' list is an important means by which bid rigging can be minimized. In fact, there is a letter that is attached to the moving papers by the Justice Department or the Attorney General's office wherein they recommend that in their opinion the list is not available until after the bids are opened.

Bid rigging is not only achievable when general contractors and subcontractors [collude] as to price but also can occur when prospective bidders know in advance that there is no competition. . . .

For that compelling reason, it is represented that 20 out of 21 counties in New Jersey, all of them government purchasing organizations, and the educational materials provided to public-purchasing officials support non-disclosure of bidders' lists as a means to promote competition in government contract.

This critical need for confidentiality cannot be outweighed by the plaintiff subcontractor's interest in disclosure particularly where, as here, ... there are other reasonable and less intrusive means by which the company can make its presence known to general contractors: i.e., there are two different services by which that information is given to general contractors as to those who might be available. In addition. there is available to the plaintiff a list of those contractors or general contractors who might be eligible to obtain and to bid on different jobs.

Plaintiff argues that the statistical information presented does not support the position that public access to the bidders list will result in more bid rigging. Plaintiff relies on *Philadelphia Newspapers, Inc. v. Department of Law and Public Safety*, 232 *N.J.Super.* 458, 464, 557 *A.2d* 688 (App.Div.1989), in which we found that disclosure of confidential information concerning the governor's helicopter use was proper. The State in that case presented "no evidence that disclosing the information would render the Governor or Attorney General any more vulnerable to assassination than not disclosing the information." *Id.* at 465–66, 557 *A.2d* 688.

However, in the present case, substantial evidence was presented that disclosure of the list would be harmful to the public interest. The County's Purchasing Agent testified that the New Jersey Association of County Purchasing Officials has an active resolution endorsing the Division of Criminal Justice's position that this list should not be disclosed. The purchasing agent's opinion was that disclosure would foster bid-rigging.

We agree that access to a bidders list facilitates collusive or bid-rigging arrangements and that withholding disclosure makes this more difficult. The Attorney General persuasively argues that

to the extent that a prospective bidder can ascertain the identity of his competitors or, better yet from the [bidder's perspective], ascertain that he has no competitors, the bidder can adjust his bid so as to obtain the award of the contract at a higher price than would be required if the bidder were faced with uncertainty as to the nature of his competition.

The potential bidder could thereby "adjust" his bid if aware that there was little or perhaps no competition.

In addition, the Attorney General and the County point out that there are other ways for subcontractors such as plaintiff to identify the contractors likely to bid on projects of this type. For example, lists of bidders are available after bid openings and this will allow a subcontractor to determine which contractors are likely to bid future projects. Further, if contractors have been prequalified pursuant to *N.J.S.A.* 40A:11–28 to –31, then a list of these contractors would be available.

Bid-rigging is an extremely serious problem which costs the public enormous sums of money. The relatively insignificant interest of plaintiff and *amici* in obtaining bidders lists cannot overcome the grave danger to the public resulting from a failure to keep the door tightly closed to potential corruption in public bidding. *See Township of Hillside v. Sternin*, 25 *N.J.* 317, 326, 136 *A.*2d 265 (1957) (in public bidding matters, "it is better to leave the door [to corruption and favoritism] tightly closed than to permit it to be ajar. . . ."); *see also N.E.R.I. Corp. v. New Jersey Highway Auth.*, 147 *N.J.* 223, 236–37, 686 *A.*2d 328, 335 (1996). The bidder's list need not be disclosed.

Affirmed.